**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIT SHI GOH, | Civil No. 2:16-cv-02811 (KSH) (CLW) |
| *Plaintiff,* | |
| v. | |
| NORI O INC., d/b/a SUSHI O, OTAYA SUSHI II, INC., d/b/a SUSHI O, NORBU OF SUSHI O INC., d/b/a SUSHI O, PENG L. TAM a/k/a ALAN TAM, YUK YEN CHAI a/k/a IVY CHAI, YUK WING CHAI a/k/a SAM CHAI, and YOKE CHOI CHAI a/k/a TERRY CHAI, | **Opinion** |
| *Defendants.* | |

**Katharine S. Hayden, U.S.D.J.**

At all relevant times, Peng L. Tam, his wife Yuk Yen Chai, and her brothers Yuk Wing Chai and Yoke Choi Chai, all worked in the restaurant business. (Hereafter the Court will refer to Peng L. Tam by his first name, and use the other individuals' chosen names as follows: Yuk Yen Chai ("Ivy"); Yuk Wing Chai ("Sam"); and Yoke Choi Chai ("Terry").) Nori O, Inc. ("Nori O") was a restaurant management company owned by Peng, Ivy, and Sam, that operated Sushi O Asian Bistro ("Sushi O"), a dine-in and take-out restaurant in Edison, New Jersey. Otaya Sushi II Inc. ("Otaya Sushi"), a sushi catering company owned by Peng and Ivy, sublet kitchen space from Nori O where Otaya Sushi chefs prepared sushi for off-site catering at

1

nearby corporate cafeterias.  On October 30, 2015, Norbu of Sushi O, Inc. ("Norbu"), a restaurant management company owned by Ivy's other brother Terry, purchased Nori O, reorganized Sushi O, and reopened the restaurant under new management one week later.

In this lawsuit, plaintiff Jit Shi Goh, a chef at Sushi O between May 1, 2014 and June 28, 2015, has sued the foregoing individuals and entities, alleging that they were his employers and thus liable for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 24:11-56 *et seq.*  Now all defendants have filed a motion for partial summary judgment, arguing that with the exception of Peng and Nori O, under applicable law none of them can be viewed as Goh's employer, setting forth a variety of reasons in their motion papers.  In opposition, Goh's arguments are threefold: Otaya Sushi, Ivy, and her brothers Terry and Sam were "employers" for purposes of liability under the FLSA and the NJWHL; Norbu is a "successor employer" to Nori O for purposes of liability under the FLSA and the NJWHL; and Otaya Sushi formed an integrated enterprise with Nori O and thereby is subject to liability under the "single integrated enterprise" theory.

## I.    Background

As alleged in the complaint and supported by the parties' statements of undisputed material facts, Nori O was a corporation owned by Peng, his wife Ivy, and her brother Sam.  (D.E. 45, Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 3.)  As part of Nori O's

business, it leased property in Edison, New Jersey where it managed Sushi O, an Asian-style restaurant.  (D.E. 44-4, Peng Dep. at 20:2-8; Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 4.)  Otaya Sushi, a sushi catering business owned by Peng and Ivy, sublet kitchen space from Nori O to provide its chefs with space prepare sushi that would be sold and consumed off-site.  (Peng Dep. at 22:21-23:20; Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 5.)  Sushi O chefs and Otaya Sushi chefs prepared different food out of the same kitchen.  (Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 5.)  Sushi O and Otaya Sushi, however, were separate businesses with separate telephone numbers that employed different employees and maintained different payrolls.  (Peng Dep. at 24:13-25:1.)

Nori O employed Goh as a Sushi O chef from approximately May 1, 2014 to June 28, 2015, where he worked Tuesday through Sunday.  (Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 1-2.)  Tuesday through Friday included two shifts, 10:30 a.m. to 3:00 p.m. and 4:30 p.m. to 10:00 p.m.; Saturday included two shifts, 11:30 a.m. to 3:00 p.m. and 4:30 p.m. to 10:00 p.m.; and Sunday included one shift, 11:30 a.m. to 10:00 p.m.  (D.E. 20, FAC ¶ 48.)  This adds up to 59.5 hours per week.  Goh earned $800 per week between May 1, 2014 and August 31, 2014; $825 per week between September 1, 2014 and November 30, 2014; and $750 per week between December 1, 2014 to June 28, 2015.  (*Id.* at 49-51.)  On or about June 28, 2015, Peng and Ivy decided to terminate Goh's employment.  (D.E. 22, Amended Ans. ¶ 27.)

Approximately four months later, on October 30, 2015, Norbu, a restaurant company owned by Ivy's brother Terry, purchased Nori O.  (Pl.'s Resp. to Defs.' 56.1

Stmt. ¶ 6-7.)  After the sale, Norbu closed Sushi O to replace certain kitchen equipment and inventory, conduct repairs and renovations, and hire a new kitchen and wait staff.  (*Id.* at ¶ 21.)  On or about November 8, 2015, Norbu reopened Sushi O under new ownership and management.  (*Id.*)

## II.   Procedural History

On May 18, 2016, Goh filed a complaint based on its assertions that defendants qualified as employers pursuant to the FLSA and NJWHA and are therefore individually liable for the payment of all unpaid overtime wages.  (D.E. 1.)  On September 26, 2016, the Clerk of the Court entered default for failure to plead or otherwise defend, and on May 16, 2017, the Court entered default judgment in the amount of $84,027.90.  (D.E. 6, 8.)  On November 9, 2017, defendants filed a motion to vacate default, which the Court granted, and on April 20, 2018, defendants answered the complaint.  (D.E. 9, 11, 12.)  On June 18, 2018, Goh filed a motion to certify a collective action pursuant to the FLSA, which the Court denied.  (D.E. 16, 30.)  Goh then filed an amended complaint and defendants answered.  (D.E. 20, 22.)  Over the course of discovery, Goh and all of the individual defendants were deposed.

Defendants have now filed a motion for partial summary judgment arguing that neither Otaya Sushi, Norbu, Ivy, Sam, or Terry qualified as Goh's employer for purposes of the FLSA and NJWHL.  (D.E. 41-1, Moving Br.)  The motion is fully briefed (D.E. 41, 44, 45, 46, 50) and the Court decides it with oral argument.  *See* L. Civ. R. 78.1.

4

III.   **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the non-existence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Cop.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party must satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the

nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir 2002) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2 1358, 1363 (3d Cir. 1992).

## IV.    Discussion

It is undisputed that Nori O and Peng qualify as Goh's employer under the FLSA and NJWHL, and neither seeks dismissal in this motion.  The other defendants, however, seek summary judgment in their favor and argue that the Court should reject the theories Goh advances for liability on the part of Otaya Sushi, Norbu, Ivy, Sam, and Terry.

### A.  Joint Employment Liability – Otaya Sushi

Central to Goh's claim that Otaya Sushi is liable as an employer under the FLSA and NJWHL is whether Nori O and Otaya Sushi share joint employment liability.  Defendants argue that each entity was a separate company responsible for its respective business.  This argument is unopposed.

6

An "employer" is defined by the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  The NJWHL provides a similar definition: "'Employer' includes any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly in the interest of an employer in relation to any employee." N.J.S.A. § 34:11-56(a)(1)(g).

In determining a joint employment relationship under the FLSA, the applicable federal regulations provide that "[a] single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]."  29 C.F.R. § 791.2(a).  Joint employment liability may exist, therefore, "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 791.2(b)(3).

Both sides rely on *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462 (3d Cir. 2012), where the Third Circuit laid out what are commonly referred to now as the *Enterprise* factors for courts to consider when determining whether a joint employment relationship exists between two or more employers and a single employee.  *Id.* at 468; *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (3d Cir. 2014) (noting that the same joint employment analysis is sufficient for the FLSA and NJWHL).  The *Enterprise* factors consist of whether the

alleged employer has: "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Enterprise*, 683 F.3d at 469.

*Enterprise* announced that its factors "*do not constitute an exhaustive list* of all potentially relevant facts, and should not be 'blindly applied.'" *Id.* (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)). The *Enterprise* factors merely "provide a useful analytical framework and may generally serve as the starting point for a district court's analysis." *Id.*

Here, as defendants point out, Peng hired Goh as a Sushi O chef; Goh did not cook or work in any capacity for Otaya Sushi. At times, Sushi O chefs and Otaya Sushi chefs shared kitchen space during weekday business hours but at no point in time did Sushi O employees work or prepare food for Otaya Sushi or vice versa. While there is a commonality of ownership between Nori O and Otaya Sushi – Peng and Ivy shared 75% ownership of Nori O and 100% of Otaya Sushi – defendants assert that nothing in the record suggests that Otaya Sushi had the authority to hire and fire Goh.

Similarly, defendants argue that there is no evidence that Otaya Sushi had the authority to promulgate Goh's work rules and assignments or set the conditions of his employment. In fact, there is no evidence in the record of any interaction between

Otaya Sushi employees and Sushi O employees.  While these separate employees shared kitchen space to prepare different cuisines, defendants point out that Nori O only managed Sushi O, a lunch and dinner dine-in and take-out restaurant six days a week while Peng and Ivy managed Otaya Sushi's off-site catering business.

Finally, Nori O and Otaya Sushi were separately incorporated (D.E. 44-10, 44-12) and, as defendants highlight, maintained separate control of their employment and payroll records.  Otaya Sushi never compensated Goh, and because he refused to sign any tax forms and insisted only in cash payment, there is no record of either Nori O or Otaya Sushi controlling his taxes.

The Court is satisfied that Goh has not met his burden of adducing evidence to support his claim of joint employment liability under the FLSA and NJWHL.  The record evidence does not establish, even drawing all reasonable inferences in Goh's favor, that Otaya Sushi had the authority to hire or fire Goh; establish his work rules and set his hours or pay; assign him tasks and supervise his work; or control and maintain his payroll, insurance, or tax records.  The Court, therefore, holds that a reasonable jury considering the *Enterprise* factors could not find Otaya Sushi liable as an employer.  As such, it is dismissed as a defendant.

B.  Employer Liability under the FLSA – Ivy, Terry, Sam

To determine whether Ivy, Terry, or Sam individually qualified as employers under the FLSA, the Court again looks to the *Enterprise* factors as well as the "economic reality" of the employment situation through an examination of whether

the individual defendants carried out the functions of an employer as to Goh.  When applying the economic reality test in the context of the FLSA, "whether a person functions as an employer depends on the totality of the circumstances rather than on 'technical concepts of the employment relationship.'"  *Haybarger v Lawrence County Adult Probation & Parole*, 667 F.3d 408, 417-19 (3d Cir. 2012) (quoting *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir. 1971).  "Ultimate control is not necessarily required to find an employer-employee relationship under the FLSA, and even 'indirect' control may be sufficient."  *Enterprise*, 683 F.3d at 468.

  i.  Ivy

Defendants argue that Ivy was not Goh's employer for purposes of liability under the FLSA because she did not schedule his hours or set his pay, had no supervisory responsibilities over the Sushi O kitchen, and had no authority to hire, fire, or discipline him.  In opposition, Goh points to defendants' admission that Ivy served as an employer prior to October 30, 2015, and argues that her conduct preparing and maintaining the Sushi O payroll, holding herself out as a corporate officer on behalf of Nori O, and deciding with Peng to terminate Goh's employment establishes each of the four *Enterprise* factors.

Goh points out that in defendants' answer to the first amended complaint, they admit that Ivy "was the co-owner and operator of Nori O, Inc." before it was sold to Norbu.  (Amended Ans. ¶ 24.)  Goh also points to defendants' statement that "prior to [October 30, 2015, Ivy] had the joint authority to determine wages and

10

compensation of employees, establish work schedules and work load and to hire and fire employees," and "that she was an employer prior to October 30, 2015." (*Id.* at ¶¶ 24-25). Goh also highlights defendants' admission that Ivy compensated Goh as a Sushi O chef and that she, together with her husband Peng, decided to terminate his employment at Sushi O. (*Id.* at ¶ 27.)

Based on the record evidence, the Court is satisfied that a genuine dispute of material fact exists as to whether Ivy qualified as Goh's employer under the FLSA. As such, the Court denies summary judgment as to Ivy.

ii.   Terry

Defendants argue that as a part-time employee of Sushi O, Terry's responsibilities consisted of waiting tables, expediting orders, stocking supplies, and otherwise temporarily filling in for other employees on an as-needed basis, and that at no point in time did he ever obtain the requisite authority to act as Goh's employer for purposes of liability under the FLSA. In opposition, Goh sets forth specific instances of Terry's managerial conduct and supervision, which, is argued, establish each of the *Enterprise* factors. Specifically, Goh contends that Terry promulgated Sushi O work rules, disciplined employees, assigned Goh tasks, dictated his work hours, and compensated him for his work.

Citing to Peng's deposition, Goh contends that "[b]ecause of [Terry's] relative proficiency in English, Peng L. Tam put [Terry] in charge of drafting and promulgating English work rules for Nori O Inc." (Opp. Br. at 11.) Defendants

11

respond that little information is known about when these work rules were created, whether they were distributed to Sushi O employees, and whether anyone who may have received a copy would have been able to read and understand them given the low level of English proficiency of everyone involved. Defendants point to evidence in the record that the rules were created at Peng's direction, and that Terry merely cut and pasted various workplace rules he found on the internet without any understanding of them. Finally, defendants argue that there is no evidence to support that Goh ever saw the document.

Goh's attempts to further support his argument that Terry was an "employer" under the FLSA are likewise unavailing. For example, Goh argues that Terry had the authority to assign tasks because he taught Goh how to make a sauce and instructed him to replenish it; that Terry had the ability to determine his work schedule because he, "from time to time unlock[ed] the restaurant in the mornings"; that Terry compensated Sushi O employees because he, on at least one occasion, distributed sealed envelopes containing paychecks; and that Terry had the authority to discipline Sushi O employees because he spoke with Peng and Ivy over the telephone about Sushi O's business while they were on vacation.

The Court is satisfied that Goh has not adduced record evidence that would refute defendants' characterization of Terry's functions as falling far below those of an employer. Terry's conduct that Goh points to consists of ministerial work undertaken at Peng and Ivy's direction as managers of Sushi O. As for Terry's alleged role as an

employer under the FLSA, the record evidence does not establish that he acquired any authority to hire or fire Sushi O employees, to set conditions of their employment, to discipline them, or to keep employment records on them.  Applying the required *Enterprise* factors, no reasonable jury could find Terry liable as Goh's employer, and he is properly dismissed from this case.

      iii.    Sam

Defendants argue that Sam, as a silent co-owner of Nori O, was not Goh's employer for purposes of liability under the FLSA, and that although he and Goh both worked at Sushi O, their employment never overlapped in order to establish an employer/employee relationship.  In opposition, Goh argues that defendants' contradictory statements regarding Sam's role at Nori O create triable issues of fact as to what role he actually occupied at Nori O and Sushi O.  Goh also argues that Sam qualified as an employer under the FLSA because he owned a 25% interest in Nori O and, at the same time, worked for Sushi O as a chef.

As defendants point out, Sam met Goh one time in 2014, just one day before Sam stopped working at Sushi O.  During that single encounter, Sam and Goh did not speak to one another.  Sam testified that as a 25% "sleeping partner" of Nori O, he did not have the authority to hire or fire Sushi O employees and that Peng was the only individual responsible for Sushi O's employment decisions.  Sam also testified that during his employment as a Sushi O chef, not once did he instruct, supervise, discipline, or otherwise control any other Sushi O employees, including Goh.

13

To carry his burden of pointing to evidence that puts into material dispute what defendants have advanced about Sam's role at Nori O and Sushi O, Goh points to defendants' first and second set of interrogatory responses, which display that "[Sam] was part owner of Nori O Inc but did not work in the business or participate in the operation of the business." (D.E. 44-2, 44-3.) Goh argues that those conflicting responses establish a triable issue of fact for the jury because Sam testified that he worked for Sushi O as a chef.

In addition, to support the argument that Sam satisfied each of the *Enterprise* factors, Goh does not point to any record evidence but rather relies on a self-serving December 27, 2016 affidavit filed in support of his motion for default judgment. In his affidavit, Goh recites the *Enterprise* factors in a blanket statement that identifies Sam as an owner and operator of Sushi O who "had the power to hire and fire me, set my wages, set the terms and conditions of my employment, and had the authority to maintain my employment records." (D.E. 7-7.)

The Court is satisfied that Goh has not adduced record evidence that would refute defendants' characterization of Sam as a "silent" shareholder of Nori O and Sushi O chef. The inconsistent interrogatory responses that Goh points to are insufficient to challenge the facts identified by defendants that indicate that Sam did not have the authority as an employer to make decisions on behalf of Nori O or Sushi O. Further, Goh's conclusory affidavit, without citation to any specific support in the record, likewise fails to raise a genuine issue of material fact. As for Sam's alleged role

14

as an employer under the FLSA, the record does not establish that he had the power to hire or fire Goh, set his wages, set the terms and conditions of his employment, or had any authority to maintain his employment records.  Sam is properly dismissed as a defendant.

### C.  Successor Employer Liability – Norbu

#### i.   NJWHL

Defendants argue that because Norbu did not assume Nori O's lease of the Edison property, continue to employ any prior Sushi O employees, or assume any of Nori O's liabilities, and that the two entities have no common ownership or management, Norbu is not a successor employer of Nori O for purposes of liability under the NJWHL.  In opposition, Goh argues that Norbu's continuity in management, personnel, location, and general business operations rise to the level of successor liability.

In *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332 (1981), the New Jersey Supreme Court held that a purchasing corporation will be liable for the debts and liabilities of a selling corporation where:

> (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

*Id.* at 340-41.  Both parties agree that the third factor is the most pertinent in this case.
As to that factor, New Jersey uses a four-factor test to determine whether a
continuation occurred.  Those factors are:

> (i) continuity of management, personnel, physical location, assets, and
> general business operations; (ii) a cessation of ordinary business and
> dissolution of the predecessor as soon as practically and legally possible;
> (iii) assumption by the successor of the liabilities ordinarily necessary for
> the uninterrupted continuation of the business of the predecessor; and (iv)
> continuity of ownership/shareholders.

*Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61, 73 (App. Div. 1997)
(quoting *Glynwed Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275-76 (D.N.J. 1994)
(Bassler, J.)).

Here, it is undisputed that Norbu continued to offer dine-in and take-out lunch
and dinner under the same Sushi O name at the same Edison address using the same
menu during the same business hours.  Defendants claim that those are the only
factors, however, that weigh in favor of Goh's mere continuation theory of liability.
In support, defendants indicate that Norbu did not carry over any Sushi O employees
after it reorganized and reopened the restaurant.  Likewise, defendants argue that
there was no continuity of management or ownership because Peng, Ivy, and Sam
owned no interest in Norbu.  In addition, defendants note that Norbu closed Sushi O
for approximately one week in order to replace kitchen equipment, update the
employee time and attendance system, and conduct interviews to hire a new staff.

Defendants also point to the bill of sale and the terms under which Norbu purchased Nori O on October 30, 2015: "free and clear of any debts, mortgages, security interests or other liens or encumbrances." (D.E. 44-11 at 2.) Likewise, defendants set forth that Nori O did not assign its lease of the Edison restaurant property to Norbu; instead, Norbu executed a new lease of that premises with the landlord. The foregoing is strong support for defendants' arguments that Nori O ceased all ordinary business operations after the sale and that Norbu did not assume any of Nori O's liabilities as a result of the sale.

In opposition, Goh argues that there is some continuity of management and personnel because Terry had previously worked at Sushi O and Norbu continued Nori O's practice of employing family members. Goh also argues that there was some continuity of assets because Norbu kept all of Nori O's furnishings and only replaced some of the Nori O's equipment.

The Court is satisfied that Goh has not met his burden of adducing evidence to support his claim of successor employer liability under the NJWHL. The record does not establish, even drawing all reasonable inferences in Goh's favor, that Norbu, as the purchasing business entity, continued Nori O's operation of Sushi O. Goh is unable to point to a genuine dispute as to any material fact or any record evidence that would support a continuity in personnel, management, or ownership between Nori O and Norbu. Similarly, Goh has not adduced evidence that Norbu assumed Nori O's liabilities. As such, Norbu is dismissed as a defendant.

17

ii.    FLSA

Defendants argue that no continuity of ownership, management, or workforce existed between Nori O and Norbu to hold Norbu liable as a successor employer under the FLSA.  In opposition, Goh argues that Norbu continued Nori O's operations with "minimal interruption," carried over some of Nori O's employees, and had notice of Nori O's workplace violations.

To determine whether Norbu is a "successor employer" under the FLSA, and therefore obligated to assume Nori O's debts and liabilities, the Third Circuit has held that federal common law rather than New Jersey law applies.  *See Thompson*, 748 F.3d at 149-53 (agreeing with the Seventh and Ninth Circuits that "application of the federal standard to claims under the FLSA is the logical extension of existing case law").  *Thompson* identified the following three factors for consideration: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly."  748 F.3d at 151 (quoting *Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 178 (3d Cir. 2004)).

Here, defendants note again that Norbu hired all new employees before it reopened Sushi O under new management.  Goh disagrees and argues that Norbu continued Nori O's operations and work force because Terry and Sam both worked at Sushi O under Nori O management.  But this does not create a genuine dispute as

18

to any material fact about what defendants urge was a complete change in ownership, management, and staff occurring immediately after Norbu purchased Nori O.

Goh also argues that Terry had constructive notice of Nori O's legal obligations because he knew or should have known of the alleged illegal pay practices that occurred at Sushi O prior to the October 30, 2015 sale. But as defendants point out, Goh filed his complaint over seven months after Norbu purchased Nori O. Significantly, Goh does not point to evidence demonstrating scienter on Terry's part.

Finally, it is undisputed that Nori O has since dissolved, distributed all sales proceeds to Peng, Ivy, and Sam, and as a distinct business entity, is incapable of providing relief because it sold all its assets to Norbu.

The Court is satisfied that Goh has not met his burden of adducing evidence to support his claim of successor employer liability under the FLSA sufficient to take that claim to a jury. The record does not establish, even drawing all reasonable inferences in Goh's favor, any continuity in workforce between Nori O and Norbu; any genuine dispute that Norbu was not on notice of Nori O's legal obligations prior to its purchase; and any ability of Nori O to provide adequate relief directly to Goh for the alleged violations. Norbu is dismissed as a defendant.

D. Single Integrated Enterprise Theory of Liability

Finally, Goh argues for a "single integrated enterprise" theory of liability, relying on *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001). According to Goh, the test to determine whether two corporations formed a single integrated

enterprise consists of an inquiry into the following four characteristics: (1) the interrelation of business operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  *Id.* at 486.

*Pearson* arose under the WARN Act, 29 U.S.C. § 2101 *et seq.*, not the FLSA, and as the parties agree, "there is no Third Circuit precedent explicitly speaking to the issue of whether the single enterprise test can be used to impose liability in an FLSA overtime case."  (Opp. Br. at 6.)  Nevertheless, Goh contends that Otaya Sushi's operations were intertwined with Nori O's inasmuch as each business shared common ownership and management; Otaya Sushi operated Sushi O's catering business; Sushi O chefs used Otaya Sushi's rental space when it was available; and Nori O and Otaya Sushi used the same accountant.  Despite no binding Third Circuit precedent, Goh points to *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226 (E.D. Pa. 2011), in which an Eastern District of Pennsylvania magistrate judge found two defendant corporations liable under the single integrated enterprise theory.

In *Art of Life*, five paratransit drivers alleged overtime violations under the FLSA against two employer entities, Art of Life, Inc. and Advanced Life Support Ambulance, Inc. ("Advanced"), and Nick Broytman, a joint shareholder of each business.  Art of Life owned a fleet of ambulance vans that it shared with Advanced. Plaintiffs worked approximately 60-70 hours each week transporting clients to various locations in and around Philadelphia, and to account for those hours, plaintiffs used a single punch-clock regardless of whether they drove for Art of Life or Advanced.

20

Depending on the circumstances, Art of Life and/or Advanced paid the plaintiffs for their work, but as alleged in the complaint, failed to pay them overtime.  To determine liability, the court applied the *Pearson* considerations to the facts of the case and found both employers liable for unpaid overtime wages under the single integrated enterprise theory but cautioned, just as the parties do here, of the absence of Third Circuit precedent to impose direct liability in FLSA overtime cases.

Defendants argue that the single integrated enterprise theory of liability does not apply in the FLSA context and that *Art of Life* is factually distinguishable. Defendants assert that unlike the paratransit plaintiffs who worked for and were compensated by two different employers, it is undisputed that Goh never performed work for Otaya Sushi and Otaya Sushi never compensated Goh.  Further, defendants contend that because Otaya Sushi continued as a corporate sushi catering business after Norbu purchased Nori O, the two businesses could not have been dependent on one another.

The Court agrees that the circumstances presented in this case are distinguishable from those presented in *Art of Life*.  While Sushi O and Otaya Sushi had the common feature of a shared kitchen, that space served two defined purposes: to provide a place for Sushi O chefs to prepare dine-in and take-out food for their customers, and to provide a place for Otaya Sushi chefs to prepare food for resale at off-site corporate cafeterias.

In considering the remainder of the *Pearson* factors, though Peng and Ivy were common shareholders who managed both Nori O and Otaya Sushi, each business was a distinct entity with separate employees and different functions.  Likewise, there is nothing in the record to suggest a centralized control of labor or that either business had the authority to operate the other.  The body of evidence deduced by defendants through their arguments support a very different functionality on the part of Nori O and Otaya Sushi, and without more, these two businesses cannot be deemed to be "integrated" for purposes of FLSA liability.

The Court is satisfied that even assuming *Pearson* has bearing on FLSA overtime cases, Goh has not advanced sufficient record evidence to suggest that Nori O and Otaya Sushi formed a single integrated enterprise under the *Pearson* test, and application of that theory is unwarranted.

## V.    Conclusion

Defendants prevail in their arguments that Goh is unable to make a showing sufficient to establish the existence of liability under the FLSA and NJWHL as to Otaya Sushi, Norbu, Sam, and Terry.  As a result, summary judgment is granted as to those defendants but denied as to Ivy.  An appropriate order will issue.

                                                    /s/ Katharine S. Hayden
Date: December 23, 2020                  Katharine S. Hayden, U.S.D.J.